**UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF TENNESSEE
GREENEVILLE DIVISION**

| | | |
|---|---|---|
| IN RE: | ) | Case No. 2:15-bk-51795-MPP |
| | ) | Chapter 11 |
| REEDY GLOBAL HOLDINGS FAMILY, LLC | ) | Judge Marcia Phillips Parsons |
| | ) | |
| Debtor. | ) | |

**NOTICE OF HEARING**

Notice is hereby given that a hearing will be held on **January 5, 2016**, at 9:00 a.m., in the Bankruptcy Courtroom, James H. Quillen United States Courthouse, 220 West Depot Street, Greeneville, Tennessee, upon the Motion for Interim and Final Orders (i) Authorizing Debtor to Utilize Cash Collateral Pursuant to 11 U.S.C. § 363 and (ii) Scheduling Final Hearing Pursuant to Fed. R. Bankr. P. 2002, 4001 and 9014 filed by Debtor, Reedy Global Holdings Family LLC.

If you do not want the Court to grant the relief requested, you or your attorney must attend the hearing. If you do not attend the hearing, the Court may decide that you do not oppose the relief sought in the application and may enter an order granting that relief.

**MOTION FOR INTERIM AND FINAL ORDERS
(I) AUTHORIZING DEBTOR TO UTILIZE CASH COLLATERAL
PURSUANT TO 11 U.S.C. § 363 AND (II) SCHEDULING FINAL HEARING
PURSUANT TO FED. R. BANKR. P. 2002, 4001 AND 9014**

_____

Reedy Global Holdings Family LLC (the "Debtor'), by and through its undersigned counsel, hereby files this Motion for Entry of Interim and Final Orders (i) Authorizing Debtor to Utilize Cash Collateral Pursuant to 11 U.S.C. § 363 and (ii) Scheduling Final Hearing Pursuant to Fed. R. Bankr. P. 2002, 4001 and 9014 (the "Motion") and in support respectfully represents as follows:

**PROCEDURAL BACKGROUND**

1.  The Debtor owns, by acreage, the largest vineyard in the State of Tennessee. On November 30, 2015 (the "Petition Date"), the Debtor filed a voluntary petition for relief under

chapter 11 of title 11, United States Code (the "Bankruptcy Code"). Pursuant to sections 1107 and 1108 of the Bankruptcy Code, the Debtor is continuing to operate its business and manage its properties as a debtor-in-possession. No trustee or examiner has been appointed in the above-captioned case (the "Chapter 11 Case"), nor has any official creditors' committee been formed in the Chapter 11 Case.

2. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. Venue in this judicial district is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

3. To the best of the Debtor's knowledge, Farm Credit Mid-America, FLCA, PCA, an agricultural cooperative ("Farm Credit") is the only party asserting an interest in cash collateral. Farm Credit (through its counsel) was served with a copy of this Motion either by hand delivery, overnight delivery and/or electronic transmission. The United States Trustee and the 20 largest unsecured creditors of the Debtor were also served by one of these same means.

## RELIEF REQUESTED

4. By this Motion, the Debtor requests the authority to use a limited amount of cash and cash equivalents whenever acquired in which the Debtor's estate and Farm Credit may have an interest, including the proceeds, products, offspring, rents or profits of property ("Cash Collateral") on an interim and final basis and in such amounts as are necessary to, among other things: (i) purchase inventory, materials and supplies; (ii) fund its limited, seasonal payroll, pay utilities, and for other ongoing working capital, operational and general corporate needs and, as necessary (subject to Court approval), (iii) pay the fees, costs, expenses and disbursements of certain professionals retained by the Debtor, and (iv) pay bankruptcy-related charges, including

U.S. Trustee and related filing fees subject to the Budget attached as **Exhibit 1** hereto (the "Budget").

5.  The Debtor further requests that the Court set a final hearing on the Debtor's request for authority to use Cash Collateral. The Debtor respectfully requests that this Court set the final hearing on this Motion within twenty (20) days and on such notice as the Court may direct.

6.  The alternative to the requested relief is the immediate cessation of the Debtor's operations as a going concern. Authorization to use Cash Collateral will enable the Debtor to preserve the value of the Debtor's estate and afford the Debtor the ability to conduct an effective and orderly reorganization.

## STATEMENT OF FACTS

**A.  Operational Background**

7.  The Debtor is a Tennessee limited liability company. The Debtor owns approximately 540 acres of farmland located in the mountains just outside of Kingsport, Tennessee (the "Vineyard Property"). The Debtor acquired the bulk of the Vineyard Property between 2007 and 2008 with the proceeds from an initial loan provided by SunTrust Bank (the "Loan"). The Loan was subsequently refinanced by Farm Credit. The Vineyard Property's composition of slate, shale and limestone provides a unique soil-based environment for the growth of high-quality grapes. Beginning in 2007, as a startup enterprise, and continuing through 2013, the Debtor began the process of planting and production, harvesting its first crop in 2010, and producing subsequent harvests with consistent and robust increases in tonnage through 2013. The Debtor's first vintages were released in 2012. The Vineyard Property was

appraised in December of 2012 at $9,929,000. Today, the Vineyard Property alone accounts for nearly half the planted vineyard acreage in the entire state.

8. With the realization that the Debtor's success depended in large part on the quality of the wine produced from the Debtor's grapes, and in order to capture a piece of the rapidly-expanding agritourism market, the Debtor's principal, Michael Reedy, formed Reedy Creek Cellars, Inc. ("RCC") in 2011, to advance and undertake the production and bottling of Reedy Creek wines. While grape production and per-acre yields increased, wine production itself also flourished. Wines under RCC labels began winning awards nearly as soon as they were first produced. Reedy Creek's 2012 Syrah was awarded a concordance Gold and Best Red in the 2013 Wines of the South Competition, a competition featuring wines from fourteen states and numerous other wineries. Reedy Creek's 2011 "Frost", a white blend, became the first ever all-Tennessee wine to win a gold medal in a California competition -- the 2012 Sonoma-based Grand Harvest Awards. Several other Reedy Creek wines have captured silver medals in California-based competitions.

9. While the Debtor's farm property initially provided the cornerstone for the growth and expansion of RCC's wine-making efforts, the operating entity also partnered with the City of Kingsport to establish a winery in a renovated storage facility located near the MeadowView Marriott Conference Resort & Convention Center, as well as a tasting room and outdoor picnic, meeting, and event space immediately adjacent to the Vineyard Property.

10. In 2013, the Debtor sought additional financing from Farm Credit in order to support operations and to expand the acreage under production. In exchange for additional funding of approximately $2,300,000, Farm Credit was granted a lien on additional property acquired by the Debtor to secure both the new and existing debt. A substantial portion of this

4

additional collateral was and remains valuable, undeveloped commercial property located along the Highway 11-W corridor near Kingsport and totaling approximately 62 acres (the "Commercial Property"). The Commercial Property was appraised as of August 2013 at a value of $5,080,000.

11. Accordingly, as of the Petition Date, Farm Credit asserts liens against property with an aggregate appraised value of $15,009,000.

**B.     The Destruction of the 2014-15 Grape Crops**

12. The historically harsh winters of 2014 and 2015 proved disastrous for the Debtor. From January to April of 2014, an Arctic cold front and a southward shift in the North Polar Vortex resulted in drastically below-average temperatures extending across much of the United States, including the deep South. The extended period of record low temperatures resulted in massive transportation shutdowns and became, for many states, one of the coldest winters on record. Although not as harsh, beginning in November of 2014, the United States again experienced temperatures well below-average. Those low temperatures continued to hold in many places through March of 2015. Several snowfall records were broken, with nearly every state east of the Mississippi encountering below-average temperatures for the entire winter.

13. The 2014 winter alone did substantial damage to the Debtor's grape crop. Although the Debtor was yet to fully realize the extent of the 2014 winter damage, the Debtor and Farm Credit entered into discussions to address the initial weather-related event. These discussions resulted in the execution of a Restructuring Agreement in July of 2014 (the "Restructuring Agreement"). Under the terms of the Restructuring Agreement, the Debtor was provided with additional time to stabilize the remaining vines and make the annual payment called for under the terms of the initial loan.

5

14.     Neither party foresaw a second, historically cold winter, which all but destroyed the remaining vines. As a result, the Debtor has been unable to generate any income from the sale of grapes over the last two years, which has had a corresponding impact on the Debtor's ability to make payments against the Farm Credit obligations.

15.     During the summer of 2015, the Debtor approached Farm Credit concerning a further restructuring of the outstanding debt, which Farm Credit asserted stood at approximately $9,000,000. In exchange for an initial forbearance period, the Debtor proposed a significant payment against outstanding interest, funded by a contribution from the Debtor's principals, and an aggressive marketing and sales effort with its goal a sale of the Commercial Property, with the proceeds to be applied against the outstanding debt. Further, the Debtor proposed a plan, supported by pro formas, that demonstrated that the Vineyard Property would return to production and profitability in less than 24 months, keyed by the replanting of vines resistant to any further weather-related events, and especially the type of cold weather events that caused the crop failures in 2014 and 2015.

16.     Those negotiations collapsed in November, and Farm Credit sought foreclosure of its interests in both the Vineyard Property and the Commercial Property. This Chapter 11 was filed, in part, to halt that effort and in order to give the Debtor the opportunity to implement its plan.

C.     **The Cash Collateral**

17.     Outside of grape production, the properties produce minimal income. Presently, the only source of income arises from rent payments from lessees utilizing portions of the real property, one for a mulch business, the other for a cattle operation. Those tenants generate monthly rental payments in the amount of $3,500 (the "Rents"). The Debtor believes that Farm

6

Credit asserts or will assert an interest in the Rents. At this point, and as evidenced by the Budget, the properties also generate little in the way of expenses. Prior to the Petition Date, the Debtor obtained a loan from its principals as additional support for its short-term operations, the security for which is subordinate to any interest asserted by Farm Credit. Absent financing by Farm Credit or some third party, the Debtor anticipates that it will be required to seek additional borrowing from its stakeholders in order to fund replanting requirements, which should not exceed $300,000. In the near-term, however, the Debtor requires the use of this modest amount of cash collateral to support ongoing operations.

18.     The attached Budget covers the four-month period ending on March 31, 2016. The Budget has been developed by the Debtor, along with its advisors. The Budget represents what the Debtor believes to be the basic cash needs to sustain the Debtor's essential operations during the immediate, post-petition period. The Debtor requires the use of both the Cash Collateral, along with the proceeds of the pre-petition loan from its principals in order to fund basic operations. The Debtor's principals have no objections to the use of the loan proceeds for such purposes.

## ARGUMENT

19.     A debtor's use of estate property is governed by § 363 of the Bankruptcy Code. Section 363(c)(1) provides that a debtor may use estate property in the ordinary course of business without notice or a hearing. *See* 11 U.S.C. § 363(c)(1). Section 363(c)(2), however, permits a debtor to use, sell or lease cash collateral only if the entity with an interest in the cash collateral consents or the Court authorizes such use. *See* 11 U.S.C. § 363(c)(2). A court may authorize such use if the entity's interest in the cash collateral is adequately protected.

20. No provision of the Bankruptcy Code specifically defines the term "adequate protection." However, as discussed herein, Section 361 of the Bankruptcy Code provides that adequate protection must be furnished to the extent that the debtor's "use, sale, lease or grant results in a decrease in the value of such entity's interest in such property." 11 U.S.C. § 361(1), (2),(3). In other words, the purpose of adequate protection is to protect a secured creditor against a decrease in the value of its collateral. *See, e.g.,* In re Planned Systems, Inc., 78 B.R. 852 (Bankr. S.D. Ohio 1987).

21. "Adequate protection comes in a variety of forms, including periodic payments, additional or replacement liens, and other relief that provides the 'indubitable equivalent' to the protections afforded to the creditor outside of bankruptcy." In re Shivshankar P'ship LLC, 517 B.R. 812, 817 (Bankr. E.D. Tenn. 2014) (citation omitted). In addition to the statutory forms found in § 361, adequate protection may also be accomplished through the existence of an equity cushion, or "'value in the property, above the amount owed to the secured creditors . . . that will shield that interest from loss due to a decrease in the property's value during the time the automatic stay remains in effect.'" Id. (quoting In re Norton, 347 B.R. 291, 298 (Bankr. E.D. Tenn. 2006); see also Sumitomo Trust & Banking Co. v. Holly's, Inc. (In re Holly's, Inc.), 140 B.R. 643, 698 n. 87 (Bankr. W.D. Mich. 1992); In re Mr. D Realty Co., 27 B.R. 359, 364 (Bankr. S.D. Ohio 1983) ("Although the existence of an equity cushion as a method of adequate protection is not specifically delineated in § 361, it is the classic form of protection for a secured debt justifying the restraint of lien enforcement by a bankruptcy court.").

22. The existence of "an equity cushion is generally considered prima facie evidence of adequate protection." E.g., In re River Glen Land P'ship, No. 14-32732, 2015 WL 588696, at *4 (Bankr. E.D. Tenn. Feb. 11, 2015); see In re Dixie-Shamrock Oil & Gas, Inc., 39 B.R. 115,

117 (Bankr. M.D. Tenn. 1984) ("[C]ourts have found creditors adequately protected based on the mere existence of an equity cushion"); In re Mr. D Realty Co., 27 B.R. at 364 ("The conclusion that an equity cushion created by the excess of security over debt can itself constitute adequate protection with nothing more has been widely accepted") (citing cases).

23. The Debtor seeks this Court's authorization to use the Rents and provide adequate protection thereof with the "equity cushion" in the Debtor's real property. Based on the appraisals for the Vineyard Property and Commercial Property, there is a very substantial $6,000,000 "equity cushion" in the value of the Debtor's fixed assets that provides Farm Credit with adequate protection for use by the Debtor of any and all cash collateral affected by Farm Credit's liens. Additionally, Farm Credit's interest in the Rents will be adequately protected by Debtor's use of the Rents for property-related and property-preserving expenses.

24. Case law almost uniformly holds that an equity cushion of 20% or more constitutes adequate protection. In re James River Associates, 148 B.R. 790, 796 (E.D. Va. 1992). Because the Debtor is providing Farm Credit with an equity cushion of over 50%, Debtor's equity in the property is sufficient to shield Farm Credit from either the declining value of the collateral (if any) or an increase in Farm Credit's claim from accrual of interest or expenses. As a result, Farm Credit is undoubtedly and adequately protected.

25. As a general rule, courts have given broad deference to the business decisions made by debtor in possession. *See, e.g.* Richmond Leasing v. Capital Bank, 762 F.2d 1303 (5th Cir. 1985). Specifically, a bankruptcy court generally will defer to a debtor in possession's business judgment regarding the need for funds for continued operations as well as the proposed uses of such funds.

26. To preserve the going concern value of its assets, the Debtor must have immediate use of the Cash Collateral. If the use of such Cash Collateral is not immediately approved, consistent with the proposed Budget, the Debtor will have no choice but to cease operations. Accordingly, the Debtor seeks an order on the Motion approving the use of Cash Collateral and finding that the "equity cushion" provides adequate protection.

WHEREFORE, based on the foregoing, the Debtor respectfully requests that the Court enter an order approving the Debtor's use of Cash Collateral on the terms set forth herein and as supplemented in an appropriate order on an interim basis through the date of a final hearing on the Motion (the "Final Hearing"), setting a Final Hearing, and at the Final Hearing, granting the use of Cash Collateral on a continuing basis.

Dated: November 30, 2015.

Respectfully submitted,

*/s/ Erno Lindner*
Erno Lindner (TN BPR # 029273)
BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, P.C.
1800 Republic Centre
633 Chestnut Street
Chattanooga, Tennessee  37450
(423) 209-4206 (telephone)
(423) 752-9633 (facsimile)
elindner@bakerdonelson.com

*/s/ John Rowland* (Pro Hac Vice Application Pending)
John Rowland (TN BPR # 013944)
Courtney H. Gilmer (TN BPR # 022131)
BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, P.C.
Baker Donelson Center, Suite 800
211 Commerce Street
Nashville, Tennessee  37201
(615) 726-5747 (telephone)
(615) 744-5747 (facsimile)
Email for ECF purposes:
businessbknash@bakerdonelson.com
Email for all other purposes:
jrowland@bakerdonelson.com
cgilmer@bakerdonelson.com

*Attorneys for Debtor*

**CERTIFICATE OF SERVICE**

    The undersigned hereby certifies that a true and exact copy of the foregoing Motion for Interim and Final Orders (i) Authorizing Debtor to Utilize Cash Collateral Pursuant to 11 U.S.C. § 363 and (ii) Scheduling Final Hearing Pursuant to Fed. R. Bankr. P. 2002, 4001 and 9014, with attached Exhibit 1 and proposed Order, was served electronically and, in addition, upon the persons below and to the 20 Largest Creditors by placing a true and exact copy of said document in the United States Mail addressed as follows, with sufficient postage thereon to carry the same to its destination on November 30, 2015.

United States Trustee
Historic U.S. Courthouse
31 E. Eleventh Street
Fourth Floor
Chattanooga, TN 37402

City of Kingsport, Tennessee
225 West Center Street
Kingsport, TN 37660

Decade Products
3710 Sysco Ct. SE
Grand Rapids, MI 49512-2043

East Tennessee Scale Works
10000 Martel Road
Lenoir City, TN 37772

Foster Family Vineyards
234 Pete Smith Road
Louisburg, NC 27549

Green Creek Vineyards
413 Gilbert Road
Columbus, NC 28722

Jim's Supply Co., Inc.
3530 Buck Owens Blvd
Bakersfield, CA 93308

Mize Nursery & Tryon Vineyards, Inc.
311 Mize Nursery Lane
Columbus, NC 28722

Premier Equipment, LLC
921 E Stone Dr.
Kingsport, TN 37660

Roger's Trucking
P.O. Box 1614
Abingdon, VA 24212-1614

Trustee, Sullivan County, Tennessee
225 West Center Street
Kingsport, TN 37660

    */s/ Erno Lindner*
    Erno Lindner (TN BPR # 029273)